UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL F. SHOWAH | : |
| VS. | : NO. 3:02CV329 (RNC)(DFM) |
| | : |
| CITY OF BRIDGEPORT, ET AL. | : JUNE 28, 2004 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I.   **BACKGROUND**

The plaintiff had a medical practice in his residence at 3030 Park Ave., in Bridgeport, which was located next to an eleven or twelve story skilled nursing facility ("3030") His property was in a R-A zone, which permitted him to operate his medical office in his residence. Other than "3030" the other surrounding buildings in the neighborhood were private homes.

In 1998, Dr. Showah decided that he would like to obtain approval to permit the building to be used by multiple practitioners. From a practical point of view, the impact of such a change on the neighborhood would have been the likelihood of several more automobiles parked in the driveway of the home. Perhaps it would have been necessary to expand the parking area behind the residence. Again, the home was located next to a large apartment complex with a parking area.

Dr. Showah's applications before the Bridgeport Planning and Zoning Commission for a change from an R-A zone to an R-C zone were denied in August, 1998, and again in 2000.

At least two other professionals located in R-A zones obtained permission to use their residence offices as multi-practitioner offices;  Dr. Robert Zikaras at 2456 Park Ave., approximately four blocks from Dr. Showah in a residential neighborhood, and a group of attorneys at 3296 Main St. (Ex. 8, Zoning Cards, City of Bridgeport)  In 1998, when Dr. Showah first applied for the zone change, the Bridgeport Regional Future Land Use Map designated the area around 3296 Main St. R-A, yet the attorneys were able to obtain approval for a mult-professional office.

Dr. Showah was asked to pay an unusually large sum to his attorney shortly before the zoning hearing in July, 1998.  This occurred after he received a call from Daniel Shamis, an associate of the Mayor's, asking how much Showah was paying his attorney for the zoning application project.  After the plaintiff refused to make the additional $3,000 payment in July, 1998, his application was denied on August 10, 1998. Subsequent appeals and re-applications occurred for the next two (2) years, with no favorable result.

The Commission stated in its decision that it was concerned about "spot zoning" as a reason for its decision, but this seems ingenuous in light of the large

facility next to the plaintiff's property with multiple commercial activities, "3030" had a retail pharmacy, a convenience store and a barbershop among other things. Also, Dr. Zikaras had previously obtained approval for his residence office to be used by several practitioners. The leopard's spots were already apparent.

## II.   STANDARD FOR SUMMARY JUDGMENT

When passing upon a motion for summary judgment, the district may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences against the moving party. Tenenbum v. Williams, 193 F. 3d 581, 593 (2d Cir. 1999), cert. denied, 529 U. S. 1098 (2000). The evidence of the party against whom summary judgment is sought must be accepted as true. Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of

evidence proffered by the moving party. So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied. In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

"A party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law....The moving party is said to bear both the initial burden of production and the ultimate burden of persuasion on the motion....A nonmoving party, even though having the ultimate burden at trial, may indeed have no obligation to offer evidence supporting its own case unless the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact." Carmona v. Toledo, 215 F.3d 124, 132-33 (1st Cir. 2000).

## III.   ARGUMENT

### A.   DENIAL OF EQUAL PROTECTION

In Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1073 (2000), the Supreme Court articulated the well-established law applicable to equal protection claims. "Our cases," the court held, "have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. See Sioux City

4

Bridge Co. v. Dakota County, 260 U.S. 441, 43 S. Ct. 190, 67 L. Ed. 340 (1923); Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336, 109 S. CT. 633, 102 L. Ed. 2d 688 (1989). In so doing, we have explained that '[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" 120 S. Ct. at 1074-75. Citing Sioux City Bridge Co., supra, at 445; Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 340, 352 (1918). The court expressly held that it is sufficient, to state an equal protection violation, that "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." 528 U.S. at 563. The motivation of the perpetrator is irrelevant. 528 U.S. at 565. *Cf.*, Jackson v. Burke, 256 F.3d 93, 97 (2d Cir. 2000) ("proof of subjective ill will is not an essential element of a 'class of one' equal protection claim").

"The Equal Protection Clause requires that the government treat all similarly situated people alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, we have long recognized that the equal protection guarantee also extends to

5

individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials. LeClair v. Saunders, 627 F.2d 606, 608-10 (2d Cir. 1980). The Supreme Court recently affirmed the validity of such 'class of one' claims 'where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.' Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)." Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001).

"Before Olech, the Second Circuit permitted selective enforcement claims based on a 'class of one' if the plaintiff could 'show both (1) that [he was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Russo v. City of Hartford, 184 F. Supp. 2d 169, 190 (D. Conn. 2002) (Hall, J.), citing Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). "In Harlen, the Court of Appeals assumed without holding that a plaintiff who establishes differential treatment could state an equal protection claim by showing 'either that there was no rational basis for the unequal treatment received, or that the [unequal treatment] was motivated by animus." Ibid, quoting Harlen, supra, at 500. Cf., Barstow v.

Shea, 196 F. Supp. 2d 141, 148 (D. Conn. 2002) (Arterton, J.); Oneto v. Town of Hamden, 169 F. Supp. 2d 72, 80-81 (D. Conn. 2001) (Arterton, J.); Giordano v. City of New York, 274 F.3d 740, 751 (2d Cir. 2001).

Dr. Showah contends that he was treated differently by the defendants because he did not "pay to play" at the Planning and Zoning Commission in Bridgeport. The Zoning Commission stated in their decision that "the granting of this change in zone would result in the introduction of a multitude of new uses in the area that would not conform with development in the immediate area." (Ex. 6, p. 1) This statement is non-sensical because directly adjacent to the plaintiff's residence office was a twelve story skilled nursing facility with multiple commercial uses on the property and a large parking lot. Several blocks away on the same street, Dr. Robert Zikaras had been operating a multi-physician office for years. The Commission's denial suggested that something else was at work.

Since the plaintiff had received an unexpected request for an additional $3,000 payment from his attorney shortly before the hearing, and had received an inquiry from defendant Shamis about how much he was being billed by the attorney, there appears to be sufficient circumstantial evidence to raise a material question of fact on this issue. A reasonable jury could conclude that the action of the Planning and Zoning Commission in denying the plaintiff's

application were not related to any legitimate public purpose and were motivated by some other private, impermissible interest.

### B.    SUBSTANTIVE DUE PROCESS VIOLATION

There is some analogy to be found between the difficulties experienced by Dr. Showah, and the plaintiffs in Brady v. Town of Colchester, 863 F.2d 205 (2d Cir. 1988). Both plaintiffs had reasonable expectations that the relief they sought from their respective Zoning Commissions would be forthcoming, based upon the prior use of the property, in Brady, and based upon the commercial uses adjacent to Dr. Showah in this case.  In both cases, political motives operating behind the scenes influenced the outcome of the plaintiffs' applications.

In  Brady, the Court found that the plaintiff had a viable property interest in his request for a certificate of occupancy for a residential building which had a The court noted that "in Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54 (2d Cir.1985), which also involved a Connecticut zoning dispute, we stated that 'the question of whether an applicant has a legitimate claim of entitlement to the issuance of a license or certificate [for fourteenth amendment purposes] should depend on whether, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted.'" Id. at 59. Applying the Yale Auto Parts test, we believe that if in fact the property was zoned and used commercially, appellants very likely would

8

have been entitled to the benefit of the commercial use of their property *but for* the alleged improper conduct of the appellees.

Dr. Showah's attorney, Charles Willinger, demonstrated that there were multiple commercial uses at the "3030" skilled nursing facility directly adjacent to Dr. Showah's property. At subsequent hearings, Dr. Showah and his attorney Thomas Bucci pointed out that another doctor a few blocks away on Park Ave. had obtained permission for a non-resident multi-practitioner office in an R-A zone. (That physician was represented by Charles Willinger also. Ex. 8) It appears that "but for" the pecuniary interest of the defendants Shamis and Ganim, Dr. Showah had a reasonable expectation that his application would be approved.

The court in Brady concluded that the same analysis which led them to find that Brady had a protected property interest compelled them to find a substantive due process violation, that is, the right to be free from arbitrary and irrational zoning decisions. See, Brady, p. 215.

More recently, the Second Circuit re-stated the criteria for a substantive due process violation in MKA Realty Corp. v. Town of Wallkill, 82 Fed. App. 712 (2d Cir. 2003). The plaintiff was required to show that he had a valid property interest in the granting of the zoning request, and second, that the defendants infringed the property interest in an arbitrary or irrational manner. Citing, Harlen

Associates Inc. v. Village of Mineola, 273 F.3d 494, 503 (2d Cir.2001), Walz v. Town of Smithtown, 46 F.3d 162, 168 (2d Cir.1995) (quoting Yale Auto Parts v. Johnson, 758 F.2d 54, 59 (2d Cir.1985). The reasoning behind the case, decided in 1988, remains the foundation for analysis by the Second Circuit.

### C.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

Although the ripeness requirement of Williamson originally delineated in a "takings" context, has been extended to equal protection and due process claims asserted in the context of land use challenges, the Second Circuit in Brady, assumed in its decision that the plaintiff's mandamus action satisfied the need to seek a final decision prior to filing his federal section 1983 action. Dougherty v. Town of North Hempstead Bd. of Zoning, 282 F.3d 83 (2d Cir. 2002), Williamson County Regional Planning Com'n v. Hamilton, 105 S. Ct. 3108 (1988), Brady v. Town of Colchester, 863 F.2d 205 (2d Cir. 1988).

In this case, Dr. Showah worked from March, 1998 through 2000 pursuing applications before the Bridgeport Planning and Zoning Commission, an administrative appeal from the first denial, a second application, which was approved by a 4-2 vote, but was rendered a denial because less than five (5) member of the Commission had approved the application, and finally a Mandamus action to compel the Commission to recognize the favorable vote on the second application.

From 1998-2000, the Bridgeport Planning and Zoning Commission did not have a full complement of nine (9) members, which kept the number of people available to make up a quorum artificially low. At the time of the vote on the plaintiff's application in January, 2000, there were only seven (7) Commissioners, and the vote was 4-2 in favor of the application, with one member excusing himself. The plaintiff (and other applicants before the Planning and Zoning Commission during this time period) should not have been penalized because defendant Ganim failed to appoint a sufficient number of members to the Planning and Zoning Commission. (Ex. 9, Connecticut Post Letter to Editor).

In order to raise a denial of due process, Dr. Showah should not be required to have filed a second administrative appeal of the same application. One administrative appeal and a mandamus action should be sufficient to satisfy the ripeness requirements.

## IV.   CONCLUSION

Wherefore, for the reasons set forth above, the plaintiff respectfully requests that the Defendants' Motion for Summary Judgment be denied.

THE PLAINTIFF

BY: _____
KATRENA ENGSTROM
Federal Bar No. ct09444
Williams and Pattis, LLC
51 Elm Street
New Haven, CT 06510
203/562-9931
FAX: 203/776-9494

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed first class mail, postage prepaid, on June 28, 2004, to the following counsel of record:

Attorney Barbara Brazzel-Massaro
Office of the City Attorney
999 Broad Street, 2nd Floor
Bridgeport, CT 06604

Attorney Raymond B. Rubens
295 Congress Street
Bridgeport, CT 06601-1555

_____
KATRENA ENGSTROM