UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL F. SHOWAH | : | |
| VS. | : | NO. 3:02CV329 (RNC)(DFM) |
| | : | |
| CITY OF BRIDGEPORT, ET AL. | : | JUNE 28,  2004 |

**PLAINTIFF'S LOCAL RULE 56(a)(2) STATEMENT**


**A.       Response to Defendant's Rule 56(a)(1) Statement**

1.      Admit

2.      Admit.

3.      Admit.

4.      Admit.

5.      Admit.

6.      Deny.  There is a large skilled nursing facility, Inter-Church
        Residences, directly adjacent to the plaintiff's property, 3030 Park
        Ave.  Ex. 1 (photo of house), Ex. 2, Petition of Michael Showah,
        7/27/98, "Property owners" p. 8.

7.      Admit.

8.      Admit.

9.      Admit.

10.     Admit.

11.     Admit.

12.    Deny.  Plaintiff had been considering such as request as early as 1988, after he learned that the skilled nursing facility next door had obtained permission to open a clinic and a retail pharmacy. (Ex. 3, Letter to John Bashar, Esq., 3/19/88)

13.    Admit.

14.    Admit.

15.    Admit.

16.    Admit.

17.    Admit.

18.    Deny.  (Plaintiff's deposition, p. 89 does not make such a statement)

19.    Admit.

20.    Admit.

21.    Admit in part, deny in part.  It is true that if the plaintiff had obtained approval of his application, the market value of his property would have increased. But he had consulted with William Shaw, City Planning Engineer and Clerk of the Planning and Zoning Commission, as early as 1984-5 to discuss the possibility of gaining approval for several medical providers to be located at 3000 Park Ave. (Ex. 4, Plaintiff's dep. P. 62)

22.    Admit.

23.    Deny.  A physician had obtained permission to conduct a multi-provider office from a residence, approximately four blocks away on Park Ave., in a similar residential area. (Ex. 5, Plaintiff's affidavit, ¶25.)  Also, the existence of  Interchurch, the skilled nursing facility directly adjacent to plaintiff's property with accompanying commercial outlets for banking, pharmacy,

barbershop, etc., already represented a significant impact upon neighboring properties at the time of plaintiff's application in 1998, raising a question about the legitimacy of the Planning and Zoning Commission's reference to "spot zoning" in its denial decision; Ex. 2, Atty. Willinger's presentation, 7/27/98, p. 4, para. 4.)

24.    Admit.

25.    Admit.

26.    Admit.

27.    Objection.  No cite to evidence.

28.    Objection.  No cite to evidence.

29.    Objection.  No cite to evidence.

30.    Objection.  No cite to evidence.


**B.    Plaintiff's Statement of Material Facts in Dispute**

1.    After the plaintiff called Mayor Joseph Ganim in May, 1998,  to complain about the delay in processing his March, 1998 application for zoning change, plaintiff was contacted by Daniel Shamis, a friend and associate of the Mayor; Shamis asked how much the plaintiff was paying Charles Willinger to represent him before the Planning and Zoning  hearing (Ex. 5, Affidavit of Dr. Michael Showah, ¶¶ 15-22)


2.    One month after the plaintiff retained Attorney Charles Willinger and paid him $3,000, and shortly before the July 27, 1998 hearing before the Bridgeport Planning and Zoning Commission, he received a bill from Willinger for more than $6,000.  (Ex.7, Willinger billing statement, 7/24/98)

3.    The plaintiff refused to pay the additional $3,000 to Attorney

Willinger, and in August, 1998, his application for a zoning change from R-A to R-C was denied. (Ex. 5, Affidavit of Dr. Michael Showah ¶¶22-23)

4.    The Commissioner's decision to deny plaintiff's application was allegedly based upon a determination that approval would result in "spot zoning"; but the twelve story skilled nursing facility directly adjacent to the plaintiff's property had a medical clinic and retail pharmacy within the complex.  The plaintiff's proposal complemented the area's existing land use. (Ex.2, Willinger presentation, p. 4, para. 4)

5.    There is no objectively reasonable basis for the disparate treatment accorded to plaintiff; "3030", the skilled nursing facility next to and behind his  property, had obtained a permit for a medical clinic and a retail pharmacy years before.  (Ex. Ex.2, Willinger presentation, p. 4, para. 4, Ex. 6, Planning and Zoning Commission decision, 8/12/98)

6.    The applications of at  least two other professionals who sought multi-practitioner offices in R-A zones were approved; Dr. Zikaras, at  2456 Park Ave., approximately four (4) blocks from Dr. Showah, who was approved for a variance in 1992, and " 3296 Main St.", in February, 1999.  (Ex. 8, Bridgeport Zoning Cards for the two properties)

7.    From 1998-2000,  defendant Ganim failed to appoint the required nine (9) Commissioners to the Planning and Zoning Commission, although five (5) votes for approval of an application were required under state statute; since there were only seven (7) members during this period,  Dr. Showah received a 4-2 vote approving his application, but the application was denied because less than five (5) members voted for approval. (Def. Ex. U, p. 70, Def. Ex. W, p. 88,  Ex. 9, Connecticut Post Letter to Editor).

THE PLAINTIFF

BY:_____
          KATRENA ENGSTROM
          Federal Bar No. ct09444
          Williams and Pattis, LLC
          51 Elm Street
          New Haven, CT 06510
          203/562-9931
          FAX:  203/776-9494

CERTIFICATION

      This is to certify that a copy of the foregoing was mailed, first class

mail, postage prepaid, on June 28,  2004, to the following counsel of

record:

Attorney Barbara Brazzel-Massaro
Office of the City Attorney
999 Broad Street, 2nd Floor
Bridgeport, CT 06604

Attorney Raymond B. Rubens
295 Congress Street
Bridgeport, CT 06601-1555

_____
KATRENA ENGSTROM